UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK DELLAVALLE, | : | |
| ADMINISTRATOR OF THE | : | |
| ESTATE OF DONALD TOWER, | : | |
|     Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | Civil No. 3:02CV1076(GLG)(WIG) |
| UNITED STATES OF AMERICA, | : | |
|     Defendant/Apportionment | : | |
|     Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| MARK DELLAVALLE, | : | |
| CONSERVATOR OF THE | : | |
| ESTATE AND PERSON OF | : | |
| DONALD TOWER | : | |
|     Apportionment Defendant. | : | November 2, 2004 |

**UNITED STATES' MEMORANDUM IN SUPPORT OF
MOTION TO PRECLUDE EXPERT WITNESS**

Pursuant to the Order of this Court on November 1, 2004, the Defendant / Apportionment Plaintiff, United States of America, through its undersigned counsel, hereby respectfully submits this memorandum in support of its motion to preclude admission of testimony from Plaintiff's designated expert in the above-captioned action. Such preclusion is appropriate for the reasons set forth below.

NO ORAL ARGUMENT IS REQUESTED

I.   Background

This is an action under the Federal Tort Claims Act, 28 U.S.C. §§1346(b), 2671 *et seq*. Plaintiff, Mark DellaValle, is suing the government for medical malpractice which he claims occurred in connection with the decedent, Donald Tower's treatment rendered at the Veterans Affairs Connecticut Healthcare System. Specifically, Plaintiff claims that VA treaters negligently discharged the decedent on April 20, 2001.

In relevant part, the facts show that on the morning of April 20, 2001, Dr. Helen Miller, a board certified psychiatrist, and Ms. Carol Sanders, MSW, Clinical Coordinator of the Psychiatric Emergency Room, performed independent evaluations of Mr. Tower and determined that he was not at risk for suicide. After those assessments, Dr. Miller discharged Mr. Tower with a plan to attend a court proceeding. Within hours of his discharge, Mr. Tower was found dead in a cemetery located across the street form the VA facility. A police investigation concluded that Mr. Tower had purchased a 1.75 liter bottle of vodka and some Coca Cola (based on presence of containers found near his body) at a local package store and then ingested sufficient amounts to cause his own death.

Plaintiff has provided the written opinion of David M. Mantell, Ph.D., to support his claim of medical malpractice. Dr. Mantell, a psychologist, is the Plaintiff's sole medical expert.

II.    <u>The United States's Motion to Preclude Should Be Granted Because Dr. Mantell Is Not Qualified to Testify in this Case</u>

Plaintiff's medical expert is not qualified to offer opinion testimony in this case because he is not a psychiatrist, nor does he specialize in emergency room medicine or the treatment of substance abuse. Thus the Plaintiff has failed to substantiate his claim of medical malpractice under applicable Connecticut law.

Plaintiff bears the burden in this action to prove that the Defendant was negligent and that such negligence caused the Plaintiff's injuries. As the Connecticut Appellate Court has noted,

> In every professional malpractice action, the plaintiff is required to prove that (1) the defendant was obligated to conform to a recognized standard of care, (2) the defendant deviated from that standard, (3) the plaintiff suffered some injury, and (4) the defendant's act in departing from the standard of care caused the plaintiff injury. <u>Pisel v. Stamford Hospital</u>, 180 Conn. 314, 334-43, 430 A.2d 1 (1980); <u>LaBieniec v. Baker</u>, 11 Conn. App. 199, 202-203, 526 A.2d 1341 (1987).

<u>Gordon v. Glass</u>, 66 Conn. App. 852, 855 (2001). In order to meet his burden of establishing that the VA committed medical malpractice in this case, Plaintiff is required by law to provide an expert medical opinion which supports the claim of malpractice.

> Expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person. <u>Aspiazu v. Orgera</u>, 205 Conn. 623, 631, 535 A.2d 338 (1987); <u>Collette v. Collette</u>, 177 Conn. 465, 471, 418 A.2d 891 (1979). Expert medical opinion evidence is generally required in all cases involving professional competence and malpractice. <u>Grody v. Tulin</u>, 170 Conn. 443, 449, 365 A.2d 1076 (1976); <u>Campbell v. Pommier</u>, 5 Conn. App. 29, 32, 496 A.2d 975 (1985).

Glass at 855.  In addition, the opinion of the expert in a medical malpractice case must be to a reasonable degree of medical probability.

> Where expert medical opinion evidence is required in a medical malpractice case, '[t]he causal relation between an injury and its later physical effects may be established by the direct opinion of a physician, by his deduction by the process of eliminating causes other than the traumatic agency, or by his opinion based upon a hypothetical question.' Boland v. Vanderbilt, 140 Conn. 520, 525, 102 A.2d 362 (1953).  The expert opinion cannot rest on sunrise or conjecture because the trier of fact must determine probable cause, not possible cause.  Aspiazu v. Orgera, supra, [at] 632…; Hammer v. Mount Sinai Hospital, 25 Conn. App. 702, 718, 596 A.2d 1318, cert. Denied, 220 Conn. 933, 599 A.2d 384 (1991).  In other words, the expert opinion must be based on reasonable probabilities. Struckman v. Burns, 205 Conn. 542, 555, 534 A.2d 88 (1987)." Shegog v. Zabrecky, supra, 36 Conn. App. At 745-46…"

Id., 66 Conn. App. 856-57.

Plaintiff's expert is not qualified to provide an opinion as to the standard of care for suicide assessments of adult substance abusers in an emergency room setting.  Dr. Mantell, a psychologist who specializes in the performance of court-ordered evaluations of children and adolescents, has neither the educational experience nor the practice qualifications to opine about the standard of care for assessments of substance abusing adults.

Section § 52-184c of the Connecticut General Statutes relates to the standard of care in negligence action against health care provider, and the qualifications of expert witness.  That section provides:

> (a) In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all

4

relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

Subsection (d) further provides:

(d) Any health care provider may testify as an expert in any action if he: (1) Is a "similar health care provider" pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

As the Connecticut Supreme Court has noted, subsection (d) provides two ways for an expert to qualify to testify in an action against a specialist.

The proposed expert may testify against a specialist if he or she is a similar health care provider pursuant to subsection ... (c).... General Statutes § 52-184c (d). Alternatively, if the expert does not satisfy the requirements of subsection (c), he still may testify if he, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine.... General Statutes § 52-184c (d).

Dilieto v. County Obstetrics and Gynecology Group, P.C., 265 Conn. 79, 91 (2003) (citing Grondin v. Curi, 262 Conn. 637, 650-51 (2003)). Section 52-184c ". . . sets out minimum qualification standards for experts in medical malpractice cases." Grondin, 262 Conn. at 657.   In Grondin, the issue was whether the testimony of plaintiff's medical expert was admissible against the defendant, a board-certified physician, when the plaintiff's expert himself is not board-certified.  The Supreme Court concluded that "§ 52-184c (d) does not, as a matter of law, preclude a board certified physician, *otherwise knowledgeable as to the applicable standard of care*, from testifying as an expert 'similar health care provider,' *solely* because the physician was not board certified at the time of

5

the alleged malpractice." <u>Grondin</u>, 262 Conn. at 657 (emphasis added). Clearly, in the absence of similar credentials, the proffered expert must be otherwise knowledgeable as to the applicable standard of care.

In this case, the decision to discharge Mr. Tower on April 20, 2001 was made by Helen Miller, M.D., a board certified psychiatrist. Dr. Mantell, by education and practice experience, meets neither of the necessary qualifications.

Based upon Dr. Mantell's own deposition testimony, he is a licensed psychologist, not a psychiatrist [depo. Part I, p.12, line 3], he has obtained no additional degrees or graduate credits since completing his Ph.D. in Germany in 1972 [depo. Part I, p. 12, line 14], he usually testifies as an expert witness for the state of Connecticut [depo. Part I, p. 18 line 25 thru p. 19, line 3] and 2/3 of the cases is which he is called involve the assessment of children or adolescents [depo. Part I, p. 61 lines 20-22] This is the first medical malpractice case in which he has offered an opinion [depo, Part I, p. 44, lines 1-6] and he typically testifies between 20-30 times per year [depo. Part I, p. 40, lines 3-14]. In addition, Dr. Mantell is not recognized by the American Psychological Association as having a "proficiency" in the area of substance abuse [depo. Part I, p. 46 lines 9-18] or as having a membership in the psychopharmacology or substance abuse divisions of the American Psychological Association [depo. Part I, p. 46, line 22 thru p. 47, line 14]. Dr. Mantell also does not maintain a clinical practice and therefore has no recent treatment experience with psychiatric or substance abuse patients [depo. Part I, p. 59 lines 22-24]. Dr. Mantell subscribes to no professional journals [depo. Part I, p. 61, line 23 thru p. 62, line 8], has been involved in no clinical research for more than 30 years [depo. Part I, p. 48 lines 11-13], has never worked in an emergency room [depo p. 59, line 25 thru p. 60

6

line 2], does not know whether he currently holds admitting privileges at any hospitals [depo. Part I, p. 60, lines 3-19]. Further, he has never published any articles about alcohol or other addictions [depo. Part I, pp. 48-49], can name no professional journals related to substance abuse [depo. Part I, p. 62, line 15 thru p. 63 line 13], can identify no journal articles that he has read in the past year related to addiction [depo. Part I, p. 64 line 22 thru p. 65 line 2], can name no authoritative textbook specific to substance abuse [depo. Part I, p. 68 lines 16-23], can name no authors or researchers in the area of substance abuse [depo. Part I, p. 68 line 24 thru p. 69 line 10] and cannot identify any textbook on substance abuse that he uses in his own practice [depo. Part I, p. 70 line 21]. Dr. Mantell also has never seen the American Psychiatric Association's Practice Guidelines for the Treatment of Patients with Substance Use Disorders, Alcohol, Cocaine and Opiods [depo. Part I, p. 72 line 7] and does not know whether the Guidelines are used by mental health professionals in their treatment of patients with substance abuse problems [depo. Part I, p. 73 line 3]. In addition, Dr. Mantell is not familiar with the American Society of Addiction Medicine [depo. Part I, p. 73 lines 4-9], and admitted that "I don't consider myself to be an expert in the psychopharmacology of death through intoxication" [depo. Part I, p. 78 lines 3-5].

       Finally, Dr. Mantell opined that VA treaters should have "probated" the decedent or "attempted to commit him" [depo. Part I, p. 94 lines 19-20, p. 111, line 25, p 112 line 1]. He also testified that he did not know whether a Physicians' Emergency Certificate is the "equivalent of commitment" [depo. Part II, p. 36 lines 12-16], that the decedent met DSM IV criteria for alcohol dependence but that he could not "remember" the criteria [depo. Part II, p. 68 lines 7-19], that he did not know the requirements for a Physician's

7

Emergency Certificate [depo. Part II, 72 line 12], did not know the criteria for an alcohol commitment [depo. Part II, p. 73 lines 14-25] and did not know whether a commitment for alcohol abuse was different from a commitment for mental illness [depo. Part II, p. 73 lines 14-25].  Dr. Mantell also has never assessed an adult alcoholic in an emergency room [depo. Part II, pp. 87-88] and has never initiated an alcohol commitment [depo. Part II, p. 74 lines 6-8]

Based upon all of the above factors, Dr. Mantell is not qualified to provide any expert opinion in this case.  His testimony should not be admitted for any such purpose.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


LAUREN M. NASH, ct01705
ASSISTANT U.S. ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
157 CHURCH STREET, P.O. BOX 1824
NEW HAVEN, CT  06510
Telephone: (203) 821-3700
Facsimile:  (203) 773-5373
E-mail: lauren.nash@usdoj.gov

## CERTIFICATION

This is to certify that a copy of the within and foregoing United States' Memorandum in Support of Motion to Preclude Expert Witness was hand-delivered on this 2nd day of November, 2004, to:

Raymond J. Rigat, Esq.
Gilbride & Rigat
23 East Main Street
Clinton, CT 06413

Mark Dellavalle, Esq.
614 Campbell Avenue
West Haven, CT 06516

                                                LAUREN M. NASH
                                                ASSISTANT U.S. ATTORNEY